[Cite as *State v. Matthews*, 2016-Ohio-5055.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2015-CA-73 |
| | : | |
| v. | : | T.C. NO. 15TRD5439 |
| | : | |
| ANTHONY MATTHEWS | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 22nd day of July, 2016.

. . . . . . . . . . .

RONALD C. LEWIS, Atty. Reg. No. 0061980, Bellbrook City Prosecutor, 101 N. Detroit Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

ANTHONY MATTHEWS, 435 Oxford Avenue, Dayton, Ohio 45402
        Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1}   Following a bench trial in the Xenia Municipal Court, Anthony Matthews was found guilty of one count each of operating a motor vehicle without an operator's license

and operating an unregistered motor vehicle; he was fined a total of $150 and ordered to pay court costs. Matthews challenges his convictions on appeal, pro se. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} Matthews raises numerous arguments challenging his conviction, although they are not framed as assignments of error. We will address his arguments in an order that facilitates our discussion.

## I. Jurisdiction of the Municipal Court

{¶ 3} Most fundamentally, Matthews challenges the municipal court's jurisdiction to hear his case, as well as the "district attorney's" involvement in the case, based on a lack of personal and subject matter jurisdiction. With respect to personal jurisdiction, specifically, Matthews contends that the municipal court could not obtain jurisdiction over him without his consent, and that there could be no consent without a "contract" with the municipal corporation. He also asserts that he did not voluntarily submit to the court's jurisdiction; rather, he appeared under "coercion" to prevent further "harassment" by the police.

{¶ 4} Ohio municipal courts "are created by statute, R.C. 1901.01, and their subject-matter jurisdiction is also set by statute." *State v. Mbodji,* 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 11. An Ohio municipal court "has jurisdiction over misdemeanors occurring within its territorial jurisdiction." *Id.,* citing R.C. 1901.20(A)(1). The filing of a complaint invokes the jurisdiction of a municipal court. *Id.* at ¶ 12. *See also State v. Gunnell*, 10th Dist. Franklin No. 13AP-90, 2013-Ohio-3928, ¶ 8. An Ohio Uniform Traffic Ticket serves as the complaint and summons. *See* Traf.R. 3(A). Thus, the municipal court had subject matter jurisdiction.

{¶ 5} With respect to personal jurisdiction, many courts have addressed and rejected arguments similar to the one raised by Matthews, i.e, that a citizen must consent to the jurisdiction of the court. This court and others have found that consent is unnecessary and irrelevant to a court's jurisdiction. We addressed this jurisdictional argument in *St. Paris v. Galluzzo,* 2d Dist. Champaign No. 2014-CA-4, 2014-Ohio-3260, as follows:

> The judicial power of the state is vested in "such other courts inferior to the supreme court as may from time to time be established by law." Section 1, Article IV, Ohio Constitution. The constitution gives the General Assembly the power to provide for municipal courts and their jurisdiction. *Behrle v. Beam,* 6 Ohio St.3d 41, 42, 451 N.E.2d 237 (1983). Municipal courts, as they exist today in Ohio, were established in 1951 with the enactment of R.C. Chapter 1901. *Id.*[;] *State v. Spartz,* 12th Dist. Madison No. CA99-11-026, 2000 WL 204280, * 1 (Feb. 22, 2000).

> Generally, all Ohio courts have jurisdiction over violations of Ohio law occurring in Ohio. See R.C. 2901.11(A). More to the point, municipal courts have jurisdiction over misdemeanor offenses.

> Pursuant to R.C.1901.20, "The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory."

> * * *

The Ohio Constitution Section 3, [A]rt. 18, provides: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Ohio Supreme Court in *Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. [ ] 519 (1923) noted " * * * by virtue of [S]ection 3, [A]rt. 18, of the Ohio Constitution, as amended in 1912, municipalities of the state have police power directly conferred by the people in all matters of local self-government * * *." *Id.* at 267, 140 N.E. [ ] 520–521. "Promptly after the establishment of home rule in Ohio, municipal control over municipal streets was clearly enunciated. *Billings v. Cleveland Ry. Co.,* 92 Ohio St. 478, 111 N.E. 155 (1915)." *State v. Parker,* 68 Ohio St.3d 283–284, 626 N.E.2d 106, 107 (1994). In *Parker* the Court reiterated " * * * a municipality's authority to regulate traffic comes from the Ohio Constitution * * *." *Id.* at 285, 626 N.E.2d at 108.

*Id.* at ¶ 11, quoting *City of Mount Vernon v. Young*, 5th Dist. Knox No. 2005CA45, 2006-Ohio-3319. *See also Dayton v. Galluzzo*, 2d Dist. Montgomery No. 25913, 2014-Ohio-4854, ¶ 8.

{¶ 6} Matthews's arguments that the municipal court lacked subject matter jurisdiction and that personal jurisdiction could not be invoked without his consent are without merit. Moreover, Matthews's alleged statements, on the record, that he "d[id] not wish to contract with the municipal corporation" (whether capitalized or not) had no legal

effect.

## II. Rights to Movement and Travel

{¶ 7} Matthews also argues that freedom of movement and travel are "rights" which cannot be unconstitutionally "converted" into a governmental privilege by requiring licensure and registration. However, there is no fundamental right to drive a motor vehicle, and a "burden on a single mode of transportation simply does not implicate the right to interstate travel." *St. Paris v. Galluzzo* at ¶ 15, quoting *State v. Gunnell,* 10th Dist. Franklin No 13AP-90, 2013-Ohio-3928, ¶ 13 (which quoted *Duncan v. Cone,* 6th Cir. No. 00-5705, 2000 WL 1828089 (Dec. 7, 2000)). "The right of a citizen to operate a motor vehicle upon the highways of this state is not a natural or unrestricted right, but a privilege which is subject to reasonable regulation under the police power of the state in the interest of public safety and welfare." *State v. Starnes,* 21 Ohio St.2d 38, 45, 254 N.E.2d 675 (1970), quoting *Blow v. Commr. of Motor Vehicles,* 64 N.W.2d 351, 352 (S.D.1969). Licensure and registration are such reasonable regulations.

## III. Uniform Commercial Code

{¶ 8} Matthews cites several sections of the Uniform Commercial Code (UCC). He indicates that these sections support his "valid reservation of rights" and prevent the loss of his rights by waiver or estoppel. It is unclear to us how these provisions (UCC 1-207.7, 1-308, and 1-103.6) relate to any of the issues in this case; he may be suggesting that the UCC prevents any requirement to register a vehicle, under the theory that a vehicle is a consumer or household good as defined by the UCC. We have previously stated that we found no constitutional provision, case law, or statutory law that supports this argument; we have further held that, regardless of whether a motor vehicle is deemed

to be a consumer or household good, it is subject to motor vehicle registration requirements. *St. Paris v. Galluzzo* at ¶ 17. *See also Gunnell* at ¶ 7, citing *United States v. Mitchell,* 405 F.Supp.2d 602 (D.Md.2005) ("the U.C.C. has no bearing on criminal subject matter jurisdiction") and *Van Hazel v. Luoma,* E.D.Mich. No. 05–CV–73401–DT (Oct. 27, 2005) (a "Petitioner cannot divest the State of Michigan of jurisdiction to prosecute him of a criminal offense simply by declaring a security interest in himself pursuant to the Uniform Commercial Code").

**{¶ 9}** Matthews's convictions of traffic offenses are unaffected by any UCC provisions.

### IV.    Rights to Jury Trial, Speedy Trial, and Public Trial

**{¶ 10}** Matthews further alleges that he was denied his rights to a jury trial, to a speedy trial, and to a public trial.

**{¶ 11}** In misdemeanor cases, a criminal defendant does not have an absolute right to a jury trial. *City of Mentor v. Giordano*, 9 Ohio St.2d 140, 224 N.E.2d 343 (1967), paragraph one of the syllabus; *Pierson v. Rion*, 2d Dist. Montgomery No. 23498, 2010-Ohio-1793, ¶ 23; *State v. Short,* 2d Dist. Darke No. 06-CA-1679, 2006-Ohio-6611, ¶ 13. Rather, a defendant charged with a misdemeanor waives the right to a jury trial unless he makes a timely written demand in accordance with Crim.R. 23(A). *Pierson* at ¶ 23; *Short* at ¶ 13-14.   The record of this case does not include any request by Matthews for a jury trial.

**{¶ 12}**    R.C. 2945.71(B)(2) provides that, where a charge of a first or second degree misdemeanor is pending, a person must be brought to trial within 90 days after the person's arrest or the service of summons.   Matthews's citation for driving without a

driver's license, in violation of R.C. 4510.12(A)(1) (the more serious of the two offenses) was a misdemeanor of the first degree. (The expired registration was a minor misdemeanor.) Matthews was cited on November 4, 2015, and the trial court issued its decision and the fine was imposed on December 2, 2015. Matthew's right to a speedy trial was not violated.

{¶ 13} Matthews has made no specific argument as to the manner in which he was alleged to have been denied his right to a public trial. The record reflects that the trial court conducted a bench trial on December 2, 2015, and does not include any indication that the trial was not public.

### V. Notices, Affidavits, and Motions

{¶ 14} Finally, Matthews argues that the trial court "showed unfair prejudice" by not acknowledging or "answering" notices, affidavits, and motions filed with the court. These notices, which were filed on the day of trial, included two UCC Financing Statements, a "Common Law Copyright/Trademark Notice," a "Notice of Waiver or Recourse Benefits and Rejection of Judicial Contract Enforcement" directed to the Ohio Secretary of State, and another waiver directed to the Ohio Department of Commerce.

{¶ 15} As a preliminary matter, we note that none of the filings at issue requested any action by the trial court and, to any extent that these filings were "motions" on which the trial court might reasonably have been expected to rule, they were implicitly overruled by the trial court's judgment. *See State v. Davis,* 9th Dist. Medina No. 07CA0028-M, 2008-Ohio-999, ¶ 5, quoting *Lorence v. Goeller,* 9th Dist. Lorain No. 04CA008556, 2005-Ohio-2678, ¶ 47 (stating "[i]n general, if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled"); *State v.*

*Salinas*, 10th Dist. Franklin No. 09AP-1201, 2010-Ohio-4738, ¶ 44.

{¶ 16} We disagree with Matthews's assertion that the trial court abused its discretion in failing to address or explicitly rule on these matters.

{¶ 17} Matthews's arguments are without merit and are overruled

### VI. Conclusion

{¶ 18} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Ronald C. Lewis
Anthony Matthews
Hon. Michael K. Murry